FILED

AUG 25 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED COOK INLET DRIFT ASSOCIATION; COOK INLET FISHERMEN'S FUND,

Plaintiffs - Appellants,

v.

NATIONAL MARINE FISHERIES SERVICE; NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION; HOWARD W. LUTNICK, in his official capacity as the United States Secretary of Commerce; JANET COIT, in her official capacity as Assistant Administrator, National Oceanic and Atmospheric Administration Fisheries; JON KURLAND, in his official capacity as NMFS Alaska Region Administrator,

Defendants - Appellees,

STATE OF ALASKA,

Intervenor-Defendant - Appellee.

No. 25-5523

D.C. No.
3:24-cv-00116-SLG

MEMORANDUM*

Appeal from the United States District Court
for the District of Alaska

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Sharon L. Gleason, Chief District Judge, Presiding

Argued and Submitted August 10, 2026
Anchorage, Alaska

Before: CALLAHAN, BEA, and BUMATAY, Circuit Judges.

Plaintiffs–Appellants United Cook Inlet Drift Association and the Cook Inlet Fishermen's Fund ("Plaintiffs") challenge Amendment 16 to the Fishery Management Plan for the Salmon Fisheries Off Alaska. *See* Fisheries of the Exclusive Economic Zone off Alaska; Cook Inlet Salmon; Amendment 16, 89 Fed. Reg. 34718 (April 30, 2024). The Amendment places the portion of the Cook Inlet that sits beyond state waters and within the United States' exclusive economic zone, which we refer to as the Cook Inlet EEZ, under federal management, as required by our previous decision in *United Cook Inlet Drift Association v. National Marine Fisheries Service*, 837 F.3d 1055, 1065 (9th Cir. 2016). There, we held that the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens Act"), 16 U.S.C. § 1801 *et seq.*, required that the Cook Inlet EEZ be included in a federal fishery management plan. *Id.* Plaintiffs, organizations that represent the interests of commercial fishermen who operate within the Cook Inlet EEZ, argue that the Amendment conflicts with the Magnuson-Stevens Act and with several existing National Marine Fisheries Service ("NMFS") regulations that were promulgated pursuant to the Act. The district court denied Plaintiffs' claims. We affirm.

We review the district court's decision on summary judgment de novo. *Pac. Coast Fed'n of Fishermen's Ass'n v. Blank*, 693 F.3d 1084, 1091 (9th Cir. 2012). We set aside an agency action under the Magnuson-Stevens Act if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Id.* (quoting 5 U.S.C. § 706(2)(A)).

1. The scope of the Cook Inlet EEZ fishery defined by Amendment 16 accords with the requirements of the Magnuson-Stevens Act. Plaintiffs assert that NMFS violated the Magnuson-Stevens Act by defining the fishery under management to include only those fish stocks within the Cook Inlet EEZ—thereby excluding those same fish from the fishery when they pass into Alaska's coastal waters and inland waterways, which are beyond federal jurisdiction. This definition of a "fishery," Plaintiffs contend, violates the Magnuson-Stevens Act's directive that a fishery management plan regulate "any fishing" for the stocks composing the fishery. Under the Act, a "fishery" is "one or more stocks of fish which can be treated as a unit for purposes of conservation and management and which are identified on the basis of geographical, scientific, technical, recreational, and economic characteristics," and "any fishing for such stocks." 16 U.S.C. § 1802(13). A "stock of fish" is "a species, subspecies, *geographical grouping*, or *other category of fish capable of management as a unit*." 16 U.S.C. § 1802(42) (emphasis added). As we have held, the Magnuson-Stevens Act expressly allows the agency to define

and to regulate fisheries on grounds other than a fish's migratory range. *See Or. Trollers Ass'n v. Gutierrez*, 452 F.3d 1104, 1118 (9th Cir. 2006). Both definitions plainly permit NMFS to consider non-biological factors in defining the stocks of fish constituting a federal fishery. In this case, the Amendment properly regulates "any fishing" for the geographically defined stocks of fish composing the Cook Inlet EEZ salmon fishery. And the agency reasonably identified geographical, economic, and management-related bases for defining the fishery as it did. Amendment 16's definition of the federal fishery is thus reasonable and compliant with the Magnuson-Stevens Act.

2. In their briefing, Plaintiffs further assert that the Amendment impermissibly defines the fishery to include only those salmon actually harvested within the Cook Inlet EEZ, and that this definition of the salmon fishery would render management of Cook Inlet salmon stocks impossible. The Government contests Plaintiffs' interpretation, arguing that the Amendment looks to fish populations that have *historically* been harvested in the Cook Inlet EEZ in defining the types of fish under management. At argument, Plaintiffs accepted the Government's position. We thus decline to adopt Plaintiffs' interpretation of the Amendment's fishery definition.

3. The Amendment's optimum yield assessment is consistent with and appropriately derived from its assessment of maximum sustainable yield. The

Magnuson-Stevens Act requires the agency to "assess and specify the . . . optimum yield from[] the fishery." 16 U.S.C. § 1853(a)(3). The Act defines "optimum" as "the amount of fish which . . . will provide the greatest overall benefit to the Nation," which is "prescribed on the basis of the maximum sustainable yield from the fishery" and which, "in the case of an overfished fishery, provides for rebuilding to a level consistent with producing maximum sustainable yield[.]" 16 U.S.C. § 1802(33). Maximum sustainable yield "is the largest long-term average catch or yield that can be taken from a stock or stock complex[.]" 50 C.F.R. § 600.310(e)(1)(i)(A). When assessing the "maximum sustainable yield" of a stock or fishery, NMFS looks to "spawning biomass" (the combined weight of all individual fish within a particular stock that have reached sexual maturity, *i.e.*, that are capable of reproduction) or "other appropriate measure[s] of the stock's reproductive potential[.]" *Id.* § 600.310(e)(1)(i)(C). So, contrary to Plaintiffs' assertion, it is natural that NMFS would look to the escapement needs of the *biological* stocks when assessing the maximum sustainable yield. That is because a fishery's "spawning biomass" is determined by activity beyond the bounds of the fishery and even beyond the bounds of the Magnuson-Stevens Act's jurisdictional boundaries, including activity within inland waterways. Thus, the units of analysis used to determine "maximum sustainable yield" differ from the units used to determine "optimum yield." NMFS determines "maximum sustainable yield" by considering the spawning needs of the

biological fish stock as a whole, but assesses "optimum yield" by reference to the geographically defined stock composing the fishery. Here, NMFS reasonably derived the "optimum yield" figure by adjusting the "maximum sustainable yield" figure to account for salmon fishing activity that occurs beyond the limits of the Cook Inlet EEZ, among other fishery characteristics. The Amendment's determination of optimum yield was thus reasonably derived from the agency's maximum sustainable yield calculation and consistent with the Magnuson-Stevens Act.

4. NMFS did not impermissibly defer to the State of Alaska in setting its optimum yield and maximum sustainable yield figures. Contrary to Plaintiffs' assertions, NMFS's use of historical EEZ harvest levels as the baseline for its management measures was an exercise of its independent judgment, with those harvest levels properly considered in light of federal management goals. Moreover, Plaintiffs do not identify alternative scientific information on which NMFS could better rely. *Cf. Nw. Envt'l Def. Ctr. v. Brennen*, 958 F.2d 930, 936 (9th Cir. 1992) (rejecting claim that agency failed to use "best scientific evidence" available when plaintiff did not offer scientific evidence inconsistent with the Secretary's decision).

5. Plaintiffs fail to demonstrate that the Amendment's management measures violated National Standard 2's requirement that they be "based upon the best scientific information available." 16 U.S.C. § 1851(a)(2). Plaintiffs argue that

Amendment 16 deviates from the best available science by adopting a different definition of the stocks in the Cook Inlet EEZ from that of the Stock Assessment and Fishery Evaluation Report ("SAFE Report"). But Plaintiffs fail to identify a meaningful deviation between the SAFE Report and the Amendment. Both the SAFE Report and the Amendment's maximum sustainable yield analysis examine the biological stocks in the Cook Inlet EEZ; the latter also considers the escapement requirements of the biological stocks as a whole.

6. NMFS reasonably explained why it would be impracticable to regulate the stocks of the Cook Inlet EEZ throughout their range and thus satisfied National Standard 3. National Standard 3 provides that "[t]o the extent practicable, an individual stock of fish shall be managed throughout its range, and interrelated stocks of fish shall be managed as a unit or in close coordination." 16 U.S.C. § 1851(a)(3). NMFS reasonably explained that jurisdictional boundaries limit its ability to manage fish across their range where the State has refused to accept delegated authority and the conditions necessary for federal preemption under 16 U.S.C. § 1856(b)(1) are not present. The Cook Inlet EEZ also possesses distinctive ecological and economic characteristics because it is a mixed-stock fishery where the predominant harvest method by commercial fishermen—drift gillnet gear—does not discriminate between different stocks of fish (a gillnet, as its name suggests, catches fish by entangling their gills in mesh and does not differentiate between types

of salmon or between salmon and other kinds of fish). Further, the Amendment provides for close coordination between the federal government and state officials "to the extent practicable before, during and after each fishing season."

**AFFIRMED.**